UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JOSHUA FARLEY, : | |
| : | |
| Plaintiff, : | Case No. 3:24-cv-172 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| VILLAGE OF NEW LEBANON, *et al.*, : | Magistrate Judge Caroline H. Gentry |
| : | |
| Defendants. : | |
| : | |

---

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT VILLAGE OF NEW LEBANON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DOC. NO. 20)**

---

This civil rights action is before the Court on Defendant Village of New Lebanon's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Doc. No. 20).  Plaintiff Joshua Farley ("Farley") has brought this case against Defendants the Village of New Lebanon (the "Village"), Raymond Arriola ("Arriola"), as the Village's former mayor, and Curtis Hensley ("Hensley"), as the Village's former chief of police (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983. (Doc. No. 13 at PageID 53.)  In short, Farley claims that Defendants violated his constitutional rights by subjecting him to arrest and prosecution for his speech on three separate occasions, in violation of the First and Fourth Amendments of the United States Constitution. (Doc. No. 13 at PageID 62-65.)  Now, the Village argues, under Fed. R. Civ. P. 12(b)(6), that Farley has failed to state a claim against the municipality because he has not adequately posited an unconstitutional Village policy or custom, which led to the alleged constitutional violations at issue.  (Doc. No. 20 at PageID 84.)  Based on the rationale stated below, the Court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, Defendant Village of New Lebanon's Motion to Dismiss Plaintiff's Amended

Complaint (Doc. No. 20).

## I. BACKGROUND

Before diving into the substance of Farley's allegations, the Court would briefly introduce the Defendants. The Village is a municipality operating in Montgomery County, Ohio. (Doc. No. 13 at PageID 54.) Arriola previously served as the Village's mayor, until losing reelection in November of 2023. (*Id.* at PageID 54, 60.) Hensley served as the Village's chief of police, until being fired by new leadership for misconduct related to the factual allegations in this case, in April of 2024. (Doc. No. 1-2.)

This case stems from the ongoing displeasure of Farley, a Village resident, with how Defendants have exercised their police power, spanning back to June of 2022. (Doc. No. 13 at PageID 54-55.) On June 12, 2022, Village police were called to Farley's home on a noise complaint made by Farley's neighbor. (*Id.* at PageID 55.) After going around the side of Farley's house to get his attention, the responding officer was able to speak with Farley at his front door. (*Id.*) At that time, Farley began to criticize the responding officer, who was allegedly unhappy with Farley's critiques. (*Id.*) In addition, Farley began arguing with his neighbor, who had come outside since police arrived. (*Id.* at PageID 56.) Farley and his neighbor exchanged disparaging comments and Farley admittedly swore at his neighbor. (*Id.*) When the responding officer was unable to diffuse the neighbors' confrontation, Farley was issued a citation for violation of local sound ordinances and disorderly conduct pursuant to Ohio Rev. Code § 2917.11(A)(2). (*Id.*) Farley was criminally charged and prosecuted accordingly, and, when Farley contested the charges, prosecutors alleged an additional criminal charge against him for disorderly conduct under Ohio Rev. Code. 2917.11(B)(1). (*Id.* at PageID 56-57.) In the end, all criminal charges levied against Farley regarding the June 12 noise complaint were dismissed. (*Id.* at PageID 57.)

Following the dismissal of these charges, Farley allegedly believed that Village police had abused their power to stifle his speech. (*Id.*) Acting consistently with that belief, Farley submitted complaints to the Village police department and threatened to sue the Village under 42 U.S.C. § 1983 for civil rights violations. (*Id.*) It was then that Farley alleges Village officials considered prosecuting him for extortion. (*Id.*) However, Farley never faced any such charge. (*Id.*)

By early 2023, Farley was attending Village council meetings, where he often criticized Village officials. (*Id.*) On February 7, 2023, the Village council, including Arriola, entered into a private executive session at the Village's police department. (*Id.* at PageID 58.) In the executive session, Arriola, as Village mayor, and Hensley, as chief of police, devised a plan to arrest Farley the next time he spoke at a public council meeting. (*Id.*) Allegedly, Hensley told the council that Farley had threatened to sue the Village and this plan was meant to teach Farley a lesson. (*Id.*) Having hatched their plan, the Village council exited the executive session. (*Id.*)

When the council reconvened for public session, Farley stood to speak as he had done in the past. (*Id.* at PageID 59.) Predictably, Farley criticized the council, decrying local ordinances and the lack of accountability for Village officials. (*Id.*) Farley alleges that Arriola "purposely baited" him into engaging in a presumably animated public debate. (*Id.*) Arriola made a pre-planned hand signal and Hensley himself proceeded to arrest Farley for disturbing a public meeting, in violation of Ohio Rev. Code § 2917.12. (*Id.*) A number of citizens in attendance allegedly objected to Farley's arrest. (*Id.*) Further, a single Village councilmember privately disagreed with the plan to arrest Farley, after the fact. (*Id.* at PageID 59-60.) Nevertheless, Farley was prosecuted for disrupting a public meeting, and, when Farley contested the charge, prosecutors alleged an additional criminal charge against him for falsification under Ohio Rev. Code § 2921.13. (*Id.* at PageID 60.) Again, the criminal charges against Farley for his actions at the

Village council meeting were eventually dismissed. (*Id.* at PageID 61.)

Farley's final run-in with Village police came nearly two years after the initial noise complaint that led to his first prosecution for disorderly conduct. (*Id.*) On June 1, 2024, Farley was attempting to enter a locked church. (*Id.*) A concerned citizen witnessed Farley trying to get into the locked building and called police to investigate. (*Id.*) When responding officers arrived, Farley began arguing and cursing at them. (*Id.*) Farley was then cited and charged with disorderly conduct, in violation of Ohio Rev. Code § 2917.11(A)(2). (*Id.* at PageID 62.) That charge was later dismissed. (*Id.*)

Farley brought this action on June 11, 2024. (Doc. No. 1.) He subsequently filed his Amended Verified Complaint with Jury Demand (the "Amended Complaint") (Doc. No. 13), on August 7, 2024. In his Amended Complaint, Farley has alleged seven causes of action[1], three of which being relevant to the Village's Motion. (Doc. No. 13 at PageID 62-68.) In particular, Farley has alleged that the Village: (1) improperly enforced Ohio's disorderly conduct statute because that statute facially violates the First Amendment (*id.* at PageID 62-64); (2) engaged in First Amendment retaliation related to Farley's multiple arrests for speech-related conduct (*id.* at PageID 64-65); and, (3) subjected Farley to malicious prosecution, in violation of the Fourth Amendment (*id.* at PageID 65).

The Village filed the instant Motion on October 7, 2024. (Doc. No. 20.) Farley submitted Plaintiff's Response in Opposition to Defendant Village of Lebanon's Motion to Dismiss (the "Response") (Doc. No. 22) on October 16, 2024, and the Village filed its reply brief on October 30, 2024 (Doc. No. 25). Arriola and Hensley have stated no position with respect to the Motion.

---

[1] Farley's Amended Complaint contains eight causes of action, but he has elected to voluntarily dismiss his cause of action for violations of the Ohio Open Meetings Act, appearing under Count VIII of the Amended Complaint. (Doc. No. 17.)

4

The Village's Motion is thus ripe for review and decision.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

5

### III. ANALYSIS

The Village's Motion can be distilled down to the fundamental assertion that Farley has failed to adequately allege an unconstitutional Village policy or custom to impose municipal liability pursuant to 42 U.S.C. § 1983. (*See* Doc. No. 20 at PageID 88.) A plaintiff may only succeed on a § 1983 claim by demonstrating "that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)) (alteration in original) (internal quotation marks omitted). Further, § 1983 does not subject municipalities to vicarious liability for the unconstitutional acts of municipal agents. *Monell v. Dep't. of Soc. Servs. Of City of New York*, 436 U.S. 658, 692 (1978). The Supreme Court has defined the bounds of municipal liability in such civil rights actions, stating:

> that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. Building upon the foundations of *Monell*, a plaintiff may establish an unconstitutional municipal policy or custom by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

With this framing, Farley's allegations of municipal liability against the Village can be separated into three distinct sub-parts: Farley's facial challenge pertaining to the Village's enforcement of Ohio Rev. Code § 2917.11—Ohio's disorderly conduct statute; the Village's liability for Farley's allegedly unconstitutional arrest at the Village council meeting on February

7, 2023; and, the Village's liability related to Farley's arrests for disorderly conduct on June 12, 2022, and June 1, 2024. The Court will examine Farley's claims along these lines accordingly.

### 1. Farley's Facial Challenge to Ohio's Disorderly Conduct Statute

As stated above, in the first count of the Amended Complaint, Farley alleges that the portions of Ohio's disorderly conduct statute for which he was prosecuted are facially violative of free speech protections afforded by the First Amendment. (Doc. No. 13 at PageID 62-64.) The Village claims that even if Ohio Rev. Code § 2917.11 is unconstitutional, the Village cannot be held liable for enforcing the statute. (Doc. No. 20 at PageID 89.) In its view, the Village did not enact Ohio's disorderly conduct law and Farley has alleged no policy of enacting unconstitutional laws to justify municipal liability here. (*Id.*) In retort, Farley submits that the Village can in-fact be held liable for enforcing an allegedly unconstitutional statute like § 2917.11 because the village has discretion to simply not enforce the statute under Ohio law. (Doc. No. 22 at PageID 100-03.) Under Farley's theory, the Village's decision to enforce Ohio Rev. Code § 2917.11 constitutes direct action by the municipality to deprive citizens of their rights. (*Id.* at PageID 103.)

To what extent, if any, a municipality can be held liable for enforcing an allegedly unconstitutional statute is a fraught question in the Sixth Circuit. *Reid v. Lee*, 597 F. Supp. 3d 1177, 1200 (M.D. Tenn. 2022) ("It is currently unsettled in the Sixth Circuit whether and when a municipality can violate § 1983 by enforcing a state law alleged to be unconstitutional"). However, the Sixth Circuit has held that a municipality may be liable for enforcing a decidedly unconstitutional state statute where the municipality deliberately chose whether and how to enforce the law as a matter of policy. *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 364 (6th Cir. 1993). This standard has proven useful to the Second Circuit, in *Vives v. City of New York*, 524 F.3d 346, 351 (2nd Cir. 2008) (citing *Garner*, 8 F.3d at 364), when faced with the issue currently before this Court. Therefore, the Court takes its cues from *Vives* for purposes of deciding the

7

Village's Motion.

The Second Circuit in *Vives* established a two-part test to determine when a municipality may be held liable for enforcing an allegedly unconstitutional state law. *See Vives*, 524 F.3d at 353. Specifically, the Second Circuit found that municipal liability attaches in these situations where: (1) "the [municipality] had a meaningful choice as to whether it would enforce" a statute; and, (2) "the [municipality] adopted a discrete policy to enforce" the statute. *Id.* In this context, meaningful choice refers to "discretion to enforce or not enforce a statute." *Id.* To determine whether a municipality had a meaningful choice to enforce or not enforce a state statute, it is important to look to the language of the statute in question. *See Reid*, 597 F. Supp. 3d at 1202. If a statute's language does not impose a mandatory duty on state law enforcement, it is likely that enforcement falls within the discretion of municipalities. *Id.*

Turning to the matter at hand, the Court finds that the Village does have a meaningful choice to enforce or not enforce Ohio's disorderly conduct statute as a matter of law. Ohio Rev. Code § 2917.11 places no affirmative duty on state law enforcement officials to arrest citizens engaged in disorderly conduct. The law only proscribes citizens from behaving in a disorderly manner. *See* Ohio Rev. Code § 2917.11(A) ("No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following …"). The statute, being otherwise permissive as to enforcement, allows municipalities to police or not police disorderly conduct as they see fit.

Notwithstanding, Farley's attempt to impose municipal liability here fails because the Village has not allegedly made a discrete choice to enforce Ohio's disorderly conduct law. The term "discrete choice" in the context of municipal liability equates to a conscious choice on the part of a municipality. *Vives*, 524 F.3d at 356. "[A] municipality cannot be held liable simply for

choosing to enforce the entire [p]enal [l]aw." *Id.* A conscious choice to enforce an allegedly unconstitutional statute must be evidenced by a municipal policy to enforce that particular statute. *Id.*

Farley's Amended Complaint does not allege such a conscious choice by the Village. Farley certainly attempts to allege that Village officials used Ohio Rev. Code § 2917.11 to retaliate against him. (Doc. No. 13 at PageID 56, 62.) Yet, assuming that Village officials did retaliate against Farley for his speech, nothing about Farley's allegations allows the Court to infer that the Village has specifically chosen to enforce Ohio's disorderly conduct statute as a matter of municipal policy. Taking Farley's allegations as true, the Court can only infer that Village officials generally enforcing Ohio law used one of the many laws contained in Ohio's penal code to retaliate against one particular person. Accordingly, the Court finds that Farley has failed to state a claim for municipal liability with respect to his facial challenge in Count I of the Amended Complaint, and, the Village's Motion is **GRANTED** in this regard.

### 2. Farley's Arrest at the Village Council Meeting

The Court focuses next on Farley's claims against the Village for First Amendment retaliation and malicious prosecution, insofar as those claims refer to Farley's arrest at the Village council meeting on February 7, 2023. In addressing Farley's arrest at that Village council meeting, the Village argues that the actions of Arriola and Hensley cannot be attributed to the Village itself under § 1983. (Doc. No. 20 at PageID 90-91.) The Village contends that when Arriola and Hensley arrested Farley, they acted in their individual capacities rather than acting as final policymakers. (*Id.* at PageID 91.) By this argument, because Arriola and Hensley were not acting as final policymakers, their decisions cannot constitute official policy sufficient to expose the Village to municipal liability. (*Id.*) For his part, Farley submits the exact opposite proposition. (Doc. No. 22 at PageID 98-100.) In particular, Farley claims that Hensley, as chief of police, was

9

responsible for establishing Village law enforcement policy. (*Id.* at PageID 98.)

Generally, a municipality will only be held liable for the solitary decisions of a municipal officer in limited circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability"). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* Importantly, "[m]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). The Supreme Court has "assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Praprotnik*, 485 U.S. at 123 (citing *Owen v. City of Independence*, 445 U.S. 622, 633, 655 (1980)) (citations omitted).

As a rule, courts must identify individuals with "final authority to make municipal policy" in accordance with state law. *Feliciano*, 988 F.2d at 655 (citations omitted). "This includes 'state and local positive law,' such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." *Feliciano*, 988 F.2d at 655 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (citation omitted). When determining whether a municipal official is granted final policymaking authority under state law, courts should consider whether the official "formulates plans for the implementation of broad goals." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Hager v. Pike Cnty. Bd. of Educ.*, 286 F.3d 366, 376 (6th Cir. 2002)) (internal quotation marks omitted).

In Farley's case then, the Court must look to Ohio law and the Village's charter. Foundationally, the Village has adopted a city manager plan as its form of government. VILL. OF NEW LEBANON, OHIO, CHARTER, ART. I § 1.03 (2021). When a municipality adopts a city manager plan, Ohio law dictates that a council of five or more citizens in the municipality must "[a]ppoint a chief administration officer, to be known as the city manager." Ohio Rev. Code § 705.51(C). The Village has designated its mayor as a key councilmember with legislative authority and limited executive authority. VILL. OF NEW LEBANON, OHIO, CHARTER, ART. II. Whereas, the Village's municipal manager—appointed by the Village council—oversees the Village's various administrative agencies, including law enforcement. VILL. OF NEW LEBANON, OHIO, CHARTER, ART. IV §§ 4.01, 4.05. While the Village council may not directly discipline agency officials, the "[c]ouncil may inquire into the conduct of any office or department or any affairs of the municipality." VILL. OF NEW LEBANON, OHIO, CHARTER, ART. II § 2.18. Moreover, the Village's municipal manager is answerable to the Village council, who "shall have the authority to create, abolish and combine departments of government and specify their functions and duties for the [Village] as [the council] determines to be necessary and appropriate …." VILL. OF NEW LEBANON, OHIO, CHARTER, ART IV § 4.04.

The Court cannot say that either Arriola or Hensley was a final policymaker capable of establishing municipal liability by arresting Farley, but the Village council surely was. Under the Village's form of government, Hensley, as the chief of police, was ultimately accountable to a municipal manager. That municipal manager was in turn accountable to the Village council. When Hensley and Arriola allegedly plotted to illegally arrest Farley at a Village council meeting, they did so in an executive session called by the Village council. Councilmembers had the opportunity to reject the allegedly unconstitutional scheme in executive session and they did not.

11

If the council disapproved, they had further authority to call on the municipal manager to attend the Village council meeting and raise concerns about Hensley's conduct. Ohio Rev. Code § 705.59(B); VILL. OF NEW LEBANON, OHIO, CHARTER, ART. II § 2.18. The Court sees no cause to infer that the Village council took any such action. Rather, the councilmembers acquiesced to Farley's allegedly unconstitutional arrest. In the end, the Village council is the Village's paramount policymaking authority and, as a body, they appear to have directly participated in Farley's arrest on February 7, 2023.[2]

Therefore, the Court finds that Farley's claims for First Amendment retaliation and malicious prosecution, appearing under Counts II and III of the Amended Complaint, must survive the Village's Motion inasmuch as those claims relate to Farley's arrest at a Village council meeting on February 7, 2023. The Village's Motion is **DENIED** accordingly.

### 3. Farley's Arrests for Disorderly Conduct

The same cannot be said, however, for Farley's claims against the Village to the extent that he seeks to invoke his arrests for disorderly conduct on June 12, 2022, and June 1, 2024. Farley's position is unclear on this issue, but he seems to argue that Hensley, as chief policymaker for Village law enforcement, participated in using Ohio's disorderly conduct statute to retaliate against and maliciously prosecute Farley for his speech. (Doc. No. 22 at PageID 98-99.)

Even assuming Hensley was a final policymaking authority—which the Court just found he was not—Farley's claims cannot stand in relation to his two arrests for disorderly conduct in 2022 and 2024. The Amended Complaint contains no allegation that Hensley spearheaded Farley's arrests for disorderly conduct or his subsequent prosecutions. The Amended Complaint only alleges that Hensley began conspiring with Arriola to retaliate against Farley after he

---

[2] The Court takes care to make no definitive finding as to the Village's alleged direct action. The Court only makes such a finding at the pleading stage of this litigation, accepting Farley's allegations as true.

12

threatened to sue the Village. (Doc. No. 13 at PageID 57.) Farley does allege that "[a]pparently, Defendants think that a police department can arrest a citizen for complaining about an officer's conduct …." (*Id.* at PageID 60.) However, this is a conclusory allegation and the Court cannot reasonably permit the word "apparently" to do so much heavy lifting that it exposes the Village to liability it should not otherwise face. Hence, the Court finds that Farley's claims for First Amendment retaliation and malicious prosecution, appearing under Counts II and III of the Amended Complaint, may not go forward insofar as those claims reference Farley's arrests for disorderly conduct on June 12, 2022, and June 1, 2024. As such, the Village's Motion is **GRANTED** in this respect.

The Court also notes that Farley's claims for First Amendment retaliation and malicious prosecution do not target any of the officers who actually arrested him. To that end, the Amended Complaint only attempts to plausibly allege municipal liability related to Farley's arrests for disorderly conduct. As the Court has stated, there can be no municipal liability on Farley's claims for First Amendment retaliation and malicious prosecution, insofar as those claims regard Farley's arrests for disorderly conduct. What's more, neither Hensley nor Arriola are alleged to have arrested or prosecuted Farley themselves in those instances. Thus, Farley's claims under Counts II and III of the Amended Complaint similarly fail when applied to Hensley and Arriola, to the extent that those claims refer to Farley's arrests for disorderly conduct on June 12, 2022, and June 1, 2024.

## IV. CONCLUSION

For the reasons explained herein, the Court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, Defendant Village of New Lebanon's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 20). The Court specifically finds the following:

1. The Village's Motion is **GRANTED** with respect to Farley's First Amendment facial challenge in Count I of the Amended Complaint.  Accordingly, Count I of the Amended Complaint is hereby **DISMISSED**;

2. The Village's Motion is **DENIED** with respect to Farley's claims for First Amendment retaliation and malicious prosecution, lodged in Counts II and III of the Amended Complaint, to the extent those claims relate to Farley's arrest at the Village council meeting on February 7, 2023;

3. The Village's Motion is **GRANTED** with respect to Farley's claims for First Amendment retaliation and malicious prosecution, found in Counts II and III of the Amended Complaint, to the extent those claims relate to Farley's arrests for disorderly conduct on June 12, 2022, and June 1, 2024.  Any allegations of liability for these two arrests in Counts II and III are hereby **DISMISSED**; and,

4. The Village's Motion is **DENIED AS MOOT** with respect to Farley's former claim under the Ohio Open Meetings Act (*see supra* fn. 1).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, December 6, 2024.

> s/Thomas M. Rose
> _____
> THOMAS M. ROSE
> UNITED STATES DISTRICT JUDGE